Good morning, your honors, and may it please the court. My name is Aaron Martin. I'm a student at the University of Arizona James E. Rogers College of Law, and I'm supervised today by Dean Willie Jordan Curtis. I'm appearing on behalf of the petitioner, Mr. Lee Jun Song. I'd like to reserve one minute for rebuttal. Before I begin, Mr. Song asked me to relay a message to the court, which is, quote, do not ignore me as a child of God, end quote. When this case was before this court in 2008, this court held that the adverse credibility finding of the IJ was not supported by substantial evidence and remanded the case to the BIA for a renewed credibility determination. The BIA essentially sidestepped this court's order and held that the adverse credibility finding was justified on two bases, specifically the inconsistency between the airport interviews and Mr. Song's asylum application, and secondly, because of the failure of Mr. Song's sister to testify as a corroborating witness. Can I ask you a question? I'm not sure that I know the answer to that occurred to me. Should the BIA have remanded the case to the IJ to make a new credibility finding since three of the grounds that the IJ had relied on were impermissible, or does the BIA have the authority itself to make findings of fact even though it has not heard the witnesses? I think the BIA has that authority, Your Honor, but perhaps in a best practices kind of viewpoint, it should have remanded to the IJ for the credibility finding because the BIA essentially has the same thing that this court has, which is a stale record without seeing the petitioner live in the hearing. I think it has the authority, but whether it should have might be a matter of discretion. And that's pursuant to statute, that it has the authority to make its own findings of fact even though it hasn't heard the evidence. I mean, I can understand them saying that there's only one conclusion that could be reached from the nature of the evidence, but that's not sort of a credibility finding. Here you basically make them as a judgment about whether or not somebody is being truthful. I mean, is it clear that the BIA can make its own findings without remand? I'm not sure of the actual statutory authority. Perhaps the government could offer that to you. The two bases that the BIA relied on are not supported by substantial evidence in the record. The inconsistencies in the airport interview in Mr. Song's application cannot support adverse credibility. In this court's holding in Zhu against Mukasey, the court noted that airport interviews are inherently unreliable and that unreliability is shown in this record. If you look at pages 229 and 235 in the record, the two transcripts of the airport interviews, on those pages the immigration officers ask essentially the same exact question, which is, Mr. Song, you're lying to me because you told the officer in the prior interview a different story. Now, we only have two interviews in the record. Those interviews can't be referring to each other, so there has to be at least a third interview that either or both of them are referring to. And in pages 18 and 19 in the record, Mr. Song states that he had three interviews in Chinese with an interpreter and several other interviews without an interpreter. We don't know how many interviews there were. We don't know the order of the interviews. And in fact, the IJ and the government council before the IJ noted that the airport interviews are confusing and the IJ stated, it's page 116 of her opinion, that she's not relying on the airport interviews, that she relied solely on Mr. Song's demeanor before her at the hearing. The statements are explained by Mr. Song when asked about the discrepancies. He explains that he refused to sign the airport interviews because he wasn't sure whether the Chinese interpreter was an agent of the Chinese government. He said the first thing, noted on page 20, said the first thing the Chinese interpreter told him was that you're down, you're finished, you're dead. Mr. Song, it is perfectly reasonable for him not to tell the truth to the immigration officials when he thought that the interpreter was an agent of the Chinese government. And in tercios against INS, which is 821 Fed Second 1396, this court held that when a petitioner lies before an immigration official at the airport, that cannot go against him in an adverse credibility finding when the lie was meant to protect him from retribution by his home country government. So when he's lying about a protected ground, here when he says I'm not political, he's protecting himself from the Chinese government for fear that he would be sent back immediately, just as the two companions he was with were sent back immediately. The second reason the BIA gave that... He spoke fluent English where he didn't say anything about political persecution. Well, the two interviews that we have, one was apparently with a Mandarin interpreter and one was in English. Mr. Song states that there were a few other interviews without an interpreter. And there is nothing about politics in that English interview. But I think from the record, when you look at his asylum application, it's clear why he came to the United States. That his family, if you look at page 11 on the record, his family has a history of political opposition in China. His father was in a labor camp for 21 years. His brother was in prison for three years. He has a history in his family of political opposition. And so I don't think the absence of saying I'm here for political reasons, when he explains that fully before the IJ and in his application, should raise an adverse credibility finding. The absence of Mr. Song's sister at his testimony cannot be the basis for adverse credibility for at least three reasons. First of all, she didn't know anything that was material or non-duplicative. She could not have offered any new evidence to the IJ.  He would have been in a position to corroborate or confirm his own story. For example, about the medical condition, what, 10 stitches or whatever it was, that he says he had to endure as a result of the subject of his complaint. She might have been present at the time that he was injured, but she would have been in a position to corroborate the fact of the injury, wouldn't she? She may have corroborated that. But again, that would be duplicative information. He already stated that corroboration by definition is duplicative. That doesn't mean it may not be persuasive or desired. I mean, there's a lot of issues where, okay, we hear what the applicant himself says, but we need something to support that. Wouldn't she have been in a position to provide some of that support? She may have been, at least with the stitches on his head. For the other claims, however, his sister would not have been a necessary witness. Certainly the BIA thought she was necessary, but she was not at the demonstration in 1989, and she was not even in China in 1999 when he was arrested for the second time. She arrived in the United States on September 1st. Well, she was at least in the United States since September 1st, 1998, because she was taking English lessons here. He was arrested in June 1999, and so she wasn't even in the country or able to corroborate anything other than what he told her about what happened. The second reason that the sister's absence should not factor in is she submitted an affidavit, page 367 in the record. That affidavit tracks Mr. Song's asylum application on page 379. Both of them say that Mr. Song is here for political reasons and for his practice of Christianity. There's no negative inference to be given to the sister's absence because of the presence of the affidavit, and it's clear what the sister would have said had she testified. The third reason the sister's absence cannot factor in is because Mr. Song had no notice that his credibility was at issue. Two different IJs. Page 145, before Judge Nickerson, he says, you can bring documents, you can have witnesses, I'm just telling you what you can do. I'm not saying that you have to have it. Page 170, before Judge Seligman, who's the one who offered the decision, she says, if you have any documents, that will help me decide your case. He's not told that his credibility is at issue. I see my time's up. He's not told that his credibility is at issue. Didn't the IJ rely, in her opinion, on the absence of the sister, or did I misread? She did, Your Honor. No, that's correct. Couldn't he have moved for reconsideration? That was a form of notice. Couldn't he have moved for reconsideration, saying, hey, wait a minute, I didn't really know you wanted her. I submitted an affidavit. Well, he appealed to the BIA, but... No, but could he have moved for reconsideration before the IJ, saying, look, now that I see you really want my sister, I'm ready to produce her. Could he have done that? I'm not sure exactly procedurally, but under this Court's precedence in Chan v. Ashcroft, that case clearly states that when a petitioner finds out during the IJ's opinion, during the oral opinion, that he's not credible, and that is based on the failure to bring a relative witness to corroborate, that the IJ has to give the petitioner a second opportunity to corroborate his testimony. And so whether he could have sought a motion to reconsider is clearly not supported as a basis for an adverse credibility finding. Are there no more questions? Apparently not. Thank you. We will still give you a minute for rebuttal. Thank you, Your Honor. May it please the Court. Matt Crapo on behalf of the Attorney General. In this immigration case, a petitioner arrived in the United States on September 29, 1999, and while he was at the airport, he was interviewed at least two times on the record, sworn testimony before immigration officers. One of those interviews was conducted in the Mandarin language with an apparent Chinese interpreter, and at least one of the other ones was conducted in English without the interpreter. In neither one of those interviews did he ever suggest that he feared returning to China because of his own political activities. As he claimed before the immigration judge. Instead... Do we know who was present in the room during the English interview? There's nothing in the record to suggest that the interpreter was in the room. Or any other official or person that might have served to intimidate him? He never suggested that there was during the other one. Here, the immigration judge found him not credible because the immigration judge, as the immigration judge stated in her decision, she didn't know what to believe. She pointed out that he had lied under oath on his sworn statements. His sworn statements were inconsistent. He admitted that he lied, and so she held that he wasn't credible because he didn't corroborate his testimony with his sister's testimony, which was easily available. And the immigration judge asked him why she wasn't there. She gave him an opportunity to explain why he didn't corroborate, and she didn't find his explanation convincing. This court, on the prior appeal, found that some of the inconsistencies that the immigration judge relied on was not supported by the record and wasn't sufficient to support an adverse credibility. So it remanded the case to the board to do a renewed credibility determination and instructed the board to explain any explanations and give specific reasons for an adverse credibility determination, which the board did in this case. I just want to be sure. There's a statute. I'm just asking a question because I don't know the answer, but the board has the ability, the authority, to make credibility findings on a cold record without hearing witnesses, does that? The board actually, in this case, I don't think you have to worry about that issue because the board deferred to the immigration judge's adverse credibility finding. If the board would have decided that additional fact finding would have been necessary, they could have remanded it to the immigration judge. But the board has a longstanding standard of review where they always defer to the immigration judge's adverse credibility determinations because the immigration judge is the one who observes the testimony and is there to. . . Exactly, but if the immigration judge says, I find for the following five reasons, I find that the immigrant or the alien is not credible and it turns out that three of those are wrong, then it seems logical to me to say to go back to the immigration judge. How could you say you're deferring when the initial credibility determination was floored by reliance on factors that should not have been relied on? Ultimately, the board is the agency appellate level and this court has recognized that it only takes one substantial reason for disbelieving whether or not the alien testified credibly is sufficient to support an adverse credibility, which the board recognizes. That may be where the . . . Again, I don't want to press the issue. I just want to ask you for authority. Does the board have the authority to make an independent finding of credibility without remanding it back to the IJ? And if so, what's the source of it? I'm just not certain that I know the answer. It occurred to me as I was going over this again last night. There is the issue in this case. One thing is the timing of the appeal because Section 8 CFR 1003 1D3I does not directly apply to this case, so the board had a broader scope of review for appeals filed before September 2002, and the appeal to the board was filed in June of 2002. So the board's review in this case is actually a little broader than some of the more . . . any appeals filed after that date. Now, the board . . . I believe before that date, the board still always deferred generally to the immigration judge's adverse credibilities. In fact, in matter of AS 21 INN decision, this is a board decision, public decision 1106, they state their standard for reviewing adverse credibility determinations. So that may be some authority that you may . . . that may be helpful. When you say defer, I think . . . do I understand correctly? I don't think the board has ever made an adverse credibility determination when the immigration judge did not. So in that sense, they're always adopting the bottom line conclusion. There are a number of cases where the board selects amongst the reasons given by the IJA and points to the ones that we'll rely upon and rejects those, or by application rejects those that it decides not to rely upon. So when you say defer, the board still elects or makes some selections among the reasons in a number of cases. That's correct, Your Honor. And I'm not aware of any specific case where the board has actually made an adverse credibility finding, but I'm not sure that they're barred from doing so, even under the more restrictive standards of reviews. If, for instance, an immigration judge found an alien to be . . . to testify credibly and DHS was to appeal that to the board and were to convince the board that it was clearly erroneous, that actually the testimony was not credible, the board could reverse the immigration judge's affirmative credibility determination if it was clearly erroneous on the record, even though they do defer generally to the immigration judge. In this case, this Court has recognized, although this Court has hesitated to rely on airport interviews, in Lee v. Ashcroft, I believe, 378 F. 3rd at 963, it stated that reliance on such interviews is appropriate once the immigration judge reasonably concludes that such sworn statements are a reliable impeachment source. Here, the immigration judge hesitated to rely on the sworn statements until she recognized and Petitioner actually acknowledged that those statements accurately reflected his sworn statements and he admitted that he lied under oath. For Petitioner to claim that he didn't have any forewarning that he may be found not credible is not persuasive in the fact that in both sworn statements, they warn him that any statements he makes can be used against him in a future administrative proceeding and he testified himself that he didn't tell the truth or the whole truth and that he misled the immigration officers under sworn testimony. So he had to know that at least there may be a reason to question his credibility. And in addition, the board in compliance with this court's remand order specifically addressed his explanation, found it wasn't persuasive, the fact that he said that he feared the Chinese interpreter didn't explain why he didn't make the statement during his English language interview and so since his explanation isn't compelling, this court should adopt that finding and as the immigration judge said, since she didn't know what to believe given the fact that he had admitted to lying under oath in a prior occasion, the corroborating evidence was necessary and he failed to provide that and she gave him an opportunity to explain why he did not and he said that his sister had moved or something or he had moved and he didn't contact her but he had known when his hearing was going to be for almost two years, I believe, before it happened and the immigration judge reasonably concluded that wasn't a good enough excuse for not bringing her. As for should he have anticipated the need to bring her, let me put the question first. Did he have notice that that was something the IJ was going to cite him for prior to the rendering of the IJ's decision? He did and I believe this court's decision in situ is instructed because in situ the court actually remanded it on a due process argument that the immigration judge shouldn't have surprised him with the fact that the failure to corroborate can be a substantial evidence supporting an adverse credibility determination. In situ this court recognized that the only reason they remanded it on that ground was because this court had not, at the time the proceedings in that case took place, the court had not held that failure to corroborate could constitute substantial evidence for an adverse credibility determination. The court said that if this proceeding before the immigration judge had occurred after the court's decision in Mejia-Payez, then the whole argument would have been without because the court had held, and I think Mejia-Payez was, that decision was issued in 1997. So it was well before the immigration judge. So everyone was on a, everyone, it was very clear in this circuit that failure to corroborate could constitute substantial evidence for an adverse credibility determination. And I see that my time's up. For the reasons presented, I ask that the Court please deny the petition for review. Your Honor, this case is entirely different from the Sidhu case, which is cited in the BIA opinion. Mr. Sidhu failed to bring his father as a corroborating witness. His father, the court stated, was the only witness to certain events that Mr. Sidhu was saying were the basis for his asylum application. And the court held that he was a necessary, indispensable witness. That's not the case with Mr. Song's sister here, as I stated before. Secondly, the government sort of muddies the waters here because in their brief, they rely on 8 CFR 1003.13DI as justifying the BIA's opinion because the BIA says that we don't find anything in the IJ's opinion that's clearly erroneous, which is the standard given by the regulation. Here, they say that the discretion is broader in the BIA. So I'm not sure what to make of that right now. The final point is that, as I stated on page 11 of our reply brief, Mr. Song was proceeding pro se, and the IJ, under this court's precedent, has to tell him what will be dispositive evidence. If he has to bring a witness to corroborate his testimony, if he has to get a particular document, the IJ must tell him that because to do so to a pro se client, to leave out that information, is a due process issue. And Mr. Song was never told what he needed to bring, what result it would have, and to hold that he's not credible on that basis would be fundamentally unfair. So for these reasons, I ask you to remand the case, to find him credible, and to allow the BIA to determine whether he's eligible for asylum. He's in custody now, is that true? He's not in custody, actually. He's living in Salt Lake City. I thought I saw something that indicated he was denied bail. I may be wrong. That's true. It was a number of years ago now, though. Thank you. Thank you. We thank both sides for the excellent arguments. I think it's the third or fourth time I've heard arguments from the University of Arizona Legal Clinic. They've all been outstanding. Mr. Martin, you're a worthy successor to that pattern. Thank you. I'll proceed to the last case on today's argument calendar with United States v. Anderson submitted on the briefs. We'll now hear from the parties and counsel in United States v. Caruto.
judges: Korman, Clifton, Bybee